In re CRS STEAM, INC. and Thomas F. LeBlanc, Debtors.

CRS Steam, Inc. and Thomas F. LeBlanc, Plaintiffs/Appellees,

v.

Engineering Resources, Inc., Defendant/Appellant.

BAP No. MW 98–099.

United States Bankruptcy Appellate Panel of the First Circuit.

May 19, 1999.

Richard A. Sheils, Jr., Barry A. Bachrach and Mark W. Powers, Bowditch & Dewey, LLP, Worcester, MA, on brief for Appellant.

Joseph H. Baldiga and Christine E. Devine, Mirick, O'Connell, DeMallie & Lougee, Worcester, MA, on brief for Appellee Thomas F. LeBlanc; Kevin C. McGee and Darragh K. Kasakoff, Seder & Chandler, Worcester, MA, on brief for Appellee CRS Steam, Inc.

Before: VOTOLATO, LAMOUTTE and HAINES, Bankruptcy Judges.

HAINES, Bankruptcy Judge.

Before the panel is Engineering Resources, Inc.'s appeal of the bankruptcy court's orders denying its motion for partial summary judgment and entering default and default judgment against it in an adversary proceeding initiated by co-plaintiffs (and affiliated Chapter 11 debtors) CRS Steam, Inc. and Thomas F. LeBlanc. For the reasons set forth below, we vacate the default judgment and remand for further proceedings.

## Background

The debtors' voluntary Chapter 11 petitions followed closely on the heels of adverse rulings entered by the U.S. District Court for the Northern District of Illinois and the U.S. Court of Appeals for the Seventh Circuit in litigation with Engineering Resources, Inc. ("ERI"). Following a jury determination that CRS Steam and LeBlanc had misappropriated ERI's trade secrets and had used those secrets wrongfully to obtain two patents, the District Court entered judgment against CRS Steam and LeBlanc for $1,150,000 (comprised of compensatory and punitive damages), enjoined them from further utilizing ERI's secrets, and ordered LeBlanc to assign the patents to ERI.

The District Court's damages award and injunctive order were ultimately affirmed by the Seventh Circuit. The patents were assigned to ERI, but, within 90 days thereafter, CRS Steam and LeBlanc each filed a voluntary Chapter 11 petition in the U.S. Bankruptcy Court in Worcester, Massachusetts.

CRS Steam and LeBlanc then jointly filed a thirteen-count adversary complaint seeking, *inter alia*, to avoid the court-ordered patent assignment as a preference. ERI vigorously defended the action. It moved (successfully) to dismiss several counts. It answered the complaint, participated in the initial pretrial conference (joining in an initial stipulation), pursued extensive discovery, and moved for summary judgment. Although ERI obtained summary judgment on two fraudulent transfer counts, in a published decision the bankruptcy court denied summary judgment on the preference count. *See CRS Steam, Inc. v. Engineering Resources, Inc. (In re CRS Steam, Inc.)*, 225 B.R. 833 (Bankr.D.Mass.1998).

The court set a final pretrial conference for October 29, 1998. Before that conference convened, however, ERI's local coun-

sel, Bowditch & Dewey, L.L.P., obtained leave of court to withdraw from the case. Although ERI continued to be represented by Illinois counsel, Frederick W. Acker of Stamos & Trucco, it was left without a local attorney. At Stamos & Trucco's request, the October 29, 1998, pretrial conference was continued to November 9, 1998. Trial remained calendared for early December.

ERI failed to appear at the rescheduled pretrial conference. Plaintiffs' counsel explained to the court that they had been unable to obtain ERI's counsel's cooperation in preparing the supplemental stipulation required for the conference. The court confirmed that the earlier pretrial conference had been continued on Stamos & Trucco's request, that Bowditch & Dewey lawyers had been present at court on October 29 to discuss the continuance with plaintiffs' counsel, and that a notice of the rescheduled conference had issued.

The following colloquy ensued:

MS. DEVINE (for LeBlanc): Your honor, in accordance with [local] Rule 7016(e) we would request that the defendants [sic] be defaulted in this matter. They failed to respond and failed to participate in this pre-trial hearing. In light of the fact that we have a trial pending, scheduled for December 3rd, and no indication of what the status is with respect to their appearance here or their defense of our action, sanctions are appropriate in accordance with 7016(e), and we would request that they be defaulted.

COURT: Well, I guess I—I would think a default is warranted at this point. They asked—they have Chicago counsel. Local counsel has withdrawn. We had a pre-trial scheduled last time. They asked for a continuance. We granted that continuance to today, and there's been absolutely no one show up today.

MS. DEVINE: That's correct, Your Honor.

COURT: I don't know why a default isn't appropriate.

(J.A. at 507–08.)

The court went on to discuss other matters, returning later to the status of ERI's defense. Plaintiffs' counsel informed the judge that they understood that, in addition to ERI having no local counsel, Mr. Acker had left Stamos & Trucco's employ. They expressed an expectation that Bowditch & Dewey might re-enter the case as local counsel for ERI. The discussion continued:

COURT: [ ]Now you said earlier, Ms. Devine, you said that Bowditch & Dewey, there was some possibility for them coming back in to the case?

MS. DEVINE: That was my understanding, Your Honor. That was part of what we were waiting for, to see how that was going to resolve itself. In light of that, we agreed to the continuance to this week, for this pre-trial hearing.

COURT: Oh, you mean Bowditch & Dewey—the folks from Bowditch & Dewey who were here on the 29th said there was some—

MS. DEVINE: Right.

COURT:—possibility—

MS. DEVINE: Right.

COURT:—about them coming back?

MS. DEVINE: That's correct, Your Honor.

COURT: But have you talked to Bowditch & Dewey since?

MS. DEVINE: We haven't spoken directly to them; however, we did also CC them on the pre-trial stipulation that went to Chicago counsel—

COURT: Mmhmm.

MS. DEVINE:—with the same cover letter—

COURT: Mmhmm.

MS. DEVINE:—indicating our intention to file it on Friday of last week and to contact us with any changes, or to participate with us in the joint pre-trial statement.

MS. [DEVINE]: That was hand-delivered to Bowditch & Dewey on Friday, I think, that—

COURT: And Bowditch & Dewey had notice of today's hearing obviously.

MS. DEVINE: That's correct, Your Honor.

COURT: It participated in the setting of today's date.

MS. DEVINE: That's correct, Your Honor.

COURT: Well, okay. All right, then it looks as though you're entitled to default judgment. I think what I'd like to do is have you prepare the default judgment. . . .

(J.A. at 510–11.)

Pursuant to the judge's instruction, CRS Steam and LeBlanc filed a motion for default judgment on November 12, 1998. ERI promptly filed a motion to vacate the default and opposition to entry of default judgment. In a pleading filed November 19, 1998, CRS Steam and LeBlanc opposed ERI's motion for relief from default and urged the court to enter default judgment. On that same date, without further hearing, the bankruptcy judge denied ERI's motion and entered default judgment against it. No explanation accompanied the judge's margin endorsement denying ERI's motion to vacate the default or his executed default judgment order. This appeal ensued.

## Discussion

### 1. Review Standards

■ We review the lower court's entry of default and default judgment, as well as its refusal to vacate default, under the abuse of discretion standard. *See Zeitler v. Zeitler (In re Zeitler),* 221 B.R. 934, 937 (1st Cir. BAP 1998).[1] As the First Circuit has iterated:

Judicial discretion in necessarily broad—but it is not absolute. Abuse occurs when a material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and no improper factors are assessed, but the court makes a serious mistake in weighing them.

*Independent Oil & Chem. Workers of Quincy, Inc. v. Procter & Gamble Mfg. Co.,* 864 F.2d 927, 929 (1st Cir.1988). Accord *Ruiz–Troche v. Pepsi Cola of Puerto Rico Bottling Co.,* 161 F.3d 77, 83 (1st Cir.1998); *Coon v. Grenier,* 867 F.2d 73, 78 (1st Cir.1989); *Neal Mitchell Assocs. v. Braunstein (In re Lambeth Corp.)* 227 B.R. 1, 6–7 & n. 9 (1st Cir. BAP 1998); *see, e.g., Coon,* 867 F.2d at 78 (default judgment); *Schiff v. Rhode Island,* 199 B.R. 438, 440–41 (D.R.I.1996) (default judgment). Here, our review is colored by judicial disfavor for entry of judgment by default and a preference for disposing of cases on their merits. *See Velazquez–Rivera v. Sea–Land Serv., Inc.,* 920 F.2d 1072, 1079 (1st Cir.1990); *In re Zeitler,* 221 B.R. at 937 (citing cases).

■ Be it the entry of default judgment or the court's refusal to vacate default, we scrutinize its action by reviewing the record to see that the judge considered and appropriately applied the "good cause" factors of Federal Rule Civil Procedure 55(c), as incorporated by Federal Rule of Bankruptcy Procedure 7055(c). *See General Contracting & Trading Co., L.L.C. v. Interpole, Inc.,* 899 F.2d 109, 112 (1st Cir. 1990) (applying Rule 55(c) "good cause" standard to District court's refusal to set aside a default); *Schiff,* 199 B.R. at 440–42 (trial court's entry of default and appellate review require consideration of Rule 55(c) "good cause" factors); *In re Zeitler,* 221 B.R. at 938 ("good cause" review of entry of default and refusal to set aside a default). At minimum, the bankruptcy judge's ruling required him to consider (1) whether ERI's failure to appear at the pretrial conference was willful; (2) if setting aside the default would prejudice CRS Steam and LeBlanc; and (3) the merits of ERI's defense. *See In re Zeitler,* 221 B.R.

---

1. "A default judgment is a final order, ripe for our review." *In re Zeitler,* 221 B.R. at 936.

at 938; *accord General Contracting & Trading Co., L.L.C.,* 899 F.2d at 112; *Coon,* 867 F.2d at 75–76. It could also appropriately consider "the proffered explanation for the default, the good faith of the parties, the amount of money involved, and the timing [of the motion seeking relief from default]." *Coon,* 867 F.2d at 76. *Accord In re Zeitler,* 221 B.R. at 938.

## 2. Applying the Standard

■ As was the case in *In re Zeitler,* our review is hampered by the absence of any indication in the record that the bankruptcy judge considered and applied the foregoing factors or that he assessed the gravity of ERI's shortcoming in the peculiar context of the case before him. *See In re Zeitler,* 221 B.R. at 939; *see also Velazquez–Rivera,* 920 F.2d at 1079 (vacating a dismissal premised on plaintiff's counsel's failure to appear at a continued pretrial, finding a want of articulated reasons for "invoking the severest sanction"); *Schiff,* 199 B.R. at 442 (lamenting the bankruptcy court's order's failure to "illuminate" whether it considered 'good cause' factors in granting motion for default).

In *In re Zeitler* we remanded the matter to the bankruptcy court so that the judge could consider the defaulting party's conduct, and its request that default be vacated, in light of the appropriate factors. *See* 221 B.R. at 939–40. In so doing, however, we noted that the bankruptcy court's failure to "set forth the reasons for his entry of default judgment and for refusing to set aside that judgment in light of the appropriate factors" might, on the appropriate record, warrant outright reversal. *Id.* at

939–40 & n. 10 (citing *Coon,* 867 F.2d at 78 n. 8 and *Keegel v. Key West & Caribbean Trading Co., Inc.,* 627 F.2d 372, 374 (D.C.Cir.1980)). This is such a case.

In the case before us, the primary 'good cause' factors disfavor default. ERI's failure to attend the pretrial conference, although plainly sanctionable, should not have proved a fatal misstep. The court made no finding that ERI willfully absented itself from the conference. Indeed, the state of the record at the time default entered demonstrated plainly what ERI asserted, without contradiction, in its motion seeking relief from the order: Its local counsel had recently been granted leave to withdraw and the responsible attorney at the Illinois firm representing it had departed the firm on the eve of the conference. These are not ingredients in a recipe for willfulness. CRS Steam and LeBlanc suffered no meaningful prejudice by virtue of ERI's failure to attend the conference, and any prejudice they did suffer (*viz.* wasted attorney time) could be adequately alleviated by imposition of monetary or other sanctions short of default.[2] ERI had pleaded and prosecuted substantial defenses.[3]

The *Coon* considerations also weigh heavily against default. ERI's proffered explanation for its nonfeasance was sensible, compatible with the record, and uncontroverted. There is no suggestion that ERI acted in bad faith. Its dispute with the debtor lay at the heart of the reorganization case, with ERI's claim representing 95% of CRS Steam's unsecured debt.[4] ERI's response to the debtors' motion for default judgment and its motion to vacate

---

**2.** ERI's failure to attend the conference did not require the postponement of trial. Indeed, in its motion to set aside the default, ERI affirmatively represented that it remained ready to try the case on December 3, 1998.

**3.** True enough, the court's order denying ERI's motion for partial summary judgment had addressed, and dispatched, significant points pressed by ERI. Multiple counts (with multiple issues) remained for trial, and even

the summary judgment order remained open to change. *See* Fed.R.Civ.P. 54(b); *see also* Fed.R.Bankr.P. 7054(a) (making Federal Rule of Civil Procedure 54(b) applicable to adversary proceedings).

**4.** The bankruptcy judge described the scope, character, and significance of the dispute in great detail in his published summary judgment decision. *See In re CRS Steam, Inc.,* 225 B.R. at 835–36.

the default were filed immediately after default entered.

In short, all pertinent factors, readily ascertainable from the record before us, point to the conclusion that default should not have entered, or, at any rate, ERI's motion to vacate the default should have been granted. Under no stretch of the lower court's discretion was imposition of default judgment warranted.[5] Thus, we vacate the default judgment and remand the matter to the bankruptcy court to fashion an appropriate sanction for ERI's pretrial conference defaults and to set the case for trial.[6]

### 3. Denial of Summary Judgment

ERI asks that we review (and reverse) the bankruptcy court's order denying its motion for summary judgment on Count VII, the debtors' preference avoidance count. We decline the invitation.

To begin, an order denying summary judgment is not a final order. *See* 28 U.S.C. §§ 158(a)(1), (b) (jurisdiction to hear appeals "from final judgments, orders, and decrees"); Fed.R.Civ.Proc. 54(b) (adjudication of "fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties" unless the court directs entry of final judgment); *see also* Fed.R.Bankr.P. 7054(a); *see also, e.g., United States v. Charter Int'l Oil Co.*, 83 F.3d 510, 522 n. 16 (1st Cir. 1996) (denial of summary judgment not an appealable final order absent extenuating circumstances). Under the rules, the court's determination remains "subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." Fed.R.Civ.P. 54(b).

5. We reject the debtors' characterization that, by vacating default judgment we "fuzz" the bright lines of litigation management that lower courts endeavor to polish. We stress, as we did in *In re Zeitler*, that we appreciate the difficulty of the trial judge's task. *See* 221 B.R. at 939. The *In re Zeitler* panel observed:

> We recognize that trial courts have heavy calendars and that, rightfully, trial judges should not indulge slothfulness or dilatory or obstructive conduct. Neither should they be required to assemble an exhaustive record to support sanctions reasonably imposed in the face of such conduct.
>
> Nevertheless, when sanctions are imposed—particularly a default judgment, the severest of sanctions—the propriety of their imposition escapes informed review unless there exists some record demonstrating that the judge's action was fairly considered in light of pertinent principles.

*Id.* The lines trial courts demand litigants toe should be bright. Imposing fair and proportionate punishment for crossing those lines will not fuzz them. We do not dispute the power to punish. Rather, we commend trial courts to impose punishments that fit the crime. Careful application of the 'good cause' standards will help assure that the sanctions are justified under the circumstances and tailored to a litigant's infraction. *See Velazquez–Rivera*, 920 F.2d at 1079 ("wholeheartedly" endorsing "the use of stiff sanctions, including dismissal, where appropriate," but vacating a dismissal for failure to appear at pre-trial conference, suggesting that "if the court had tried to set forth in writing the reasons for invoking the severest sanction of dismissal, the lack of fit between provocation and penalty would have become apparent").

6. *Velazquez–Rivera*, a case that involved circumstances similar to those before us, is instructive. The *Velazquez–Rivera* plaintiffs were initially represented by the Puerto Rico Labor Relations Board in a labor grievance. When the defendants removed the case to federal court the Board withdrew from representation. The court ordered plaintiffs to retain counsel and scheduled a pre-trial conference. The plaintiffs retained counsel on the eve of the pre-trial but he had a scheduling conflict that prevented his appearance. The court rescheduled the pre-trial conference and counsel was notified. He failed to appear at the rescheduled conference. The court summarily dismissed the action and fined the attorney. *See* 920 F.2d at 1073–74. The court of appeals reversed the dismissal. It concluded that the plaintiffs' tardy retention of new counsel was not willful, that their new attorney's contact with opposing counsel prior to the pre-trial indicated he was not deliberately neglecting the case, that the case's procedural history did not evidence "protracted inaction or deliberate delay," that counsel's neglect was "relatively isolated," and that the opposing party was not prejudiced by the nonappearance. *Id.* at 1076–78.

Moreover, ERI has not moved this court for leave to appeal, *see* 28 U.S.C. § 158(a)(3); Fed.R.Bankr.P. 8003, and we see no reason to grant leave to appeal based on what the record before us reveals. *See Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.),* 218 B.R. 643, 649 (1st Cir. BAP 1998) (court may treat timely notice of appeal of interlocutory order as request for leave to appeal).

■ The order denying ERI summary judgment on Count VII is not a collateral order. *See id.* (articulating four-part test for collateral orders). Although the bankruptcy judge's holding was unequivocal on the summary judgment record, it is not, as explained above, the conclusive determination of Count VII's merits; although the order determines an "important legal question," that question is not "completely separate from the merits of the primary action"; and the court's ruling will be effectively reviewable on appeal from final judgment. *Id.*

■ We could exercise discretionary authority to review the order under 28 U.S.C. § 158(a)(3), *see In re Bank of New England Corp.,* 218 B.R. at 652–53, but we are unconvinced that to do so would "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *see also In re Bank of New England Corp.,* 218 B.R. at 654 (quoting and applying § 1292(b)). There remain multiple counts to be determined at trial. How those issues, including the preference claim, may be finally determined remains to be seen. Pending final judgment, the parties have an abundance of switches and levers by which settlement might be arranged.

Having addressed the procedural issues and having thereby opened the way for trial on the merits, we will not reach into the substantive guts of the litigation to address an issue which has not as yet received the lower court's last word.

### Conclusion

For the reasons set forth above, the bankruptcy court's entry of default and default judgment against ERI are VACATED, and the case is REMANDED to the bankruptcy court for further proceedings consistent with our decision.